AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
)   Case No. 2:21-mj-136
1096 Sidney Street )
Columbus, Ohio 43201 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, incorporated here in reference.

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 United States Code, Section 841(a)(1) and 846 | Distribution and possession with intent to distribute a controlled substance; and conspiracy to distribution and to possess with intent to distribute a controlled substance. |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*antonio kelly*
Applicant's signature

Special Agent Antonio Kelly, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: February 25, 2021

*Kimberly A. Jolson*
Kimberly A. Jolson
United States Magistrate Judge

City and state: _____

BUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN THE MATTER OF THE SEARCH OF
1096 Sidney Street, COLUMBUS,
OHIO 43201

CASE NO. 2:21·mj·136

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Antonio T. Kelly, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (hereinafter referred to as "DEA") assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of United States empowered by law to conduct criminal investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been employed by the DEA since August 21, 2016. As a Special Agent, I am empowered to investigate, to make arrests with or without warrants, and to execute search warrants under the authority of 21 U.S.C. § 878.

2. Prior to being employed by the DEA, I was employed by the Bureau of Prisons in Williamsburg, South Carolina, from March 2008 to August 2016. I also held various law enforcement positions from 2005 to the present, including with the Charleston County Sheriff's Office in Charleston, South Carolina. During this time, I have accumulated the following training and experience:

    (a) I graduated from the DEA Academy in Quantico, Virginia, on February 3, 2017. I received approximately 20 weeks of training including controlled substances identification, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcements, tactical

undercover training, surveillance and electronic monitoring techniques, money laundering investigations training, and various forensics subjects including latent fingerprint collections and analysis.

(b) During my law enforcement career, I have participated in and conducted numerous criminal investigations, including those involving possession with intent to distribute controlled substances, distribution of controlled substances, and conspiracy to possess with the intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 841 and 846. These investigations have resulted in arrests of individuals who have possessed with the intent to distribute and distributed marijuana, cocaine, cocaine base, heroin, methamphetamine, and MDMA, as well as other controlled substances. These investigations have also resulted in seizures of illegal drugs and proceeds from the distribution of those illegal drugs.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. In May 2020, members of the Columbus District Office (CDO) initiated an investigation into the Sara GARCIA Money Laundering Organization (MLO), operating in the Columbus Ohio area. GARCIA has been identified as the head of the Organization.

5. Based traffic stops, search warrants, and two undercover money pickups, totaling $124, 500 in suspected drug proceeds that occurred on May 11, 2020 and November 12, 2020, the MLO launders drug proceeds and distributes fentanyl in Columbus and surrounding areas.

2

6. On November 23, 2020, Ohio State Highway Patrol initiated a traffic stop on the GARCIA's vehicle ((2012 gray Toyota Sienna, Ohio registration JCA7832) due to the traffic stop violation. GARCIA was identified as the driver of vehicle and Oscar Daniel CAMACHO-GARCIA was identified as the passenger. At this time, an OSHP K-9 was deployed and alerted to a positive scent of illegal narcotics. After the positive alert from the K-9, GARCIA and CAMACHO-GARCIA were both read their Miranda warnings in which they both understood and complied. GARCIA and CAMACHO-GARCIA were then placed under investigative detention and placed in an OSHP mark unit.

7. A subsequent search of the vehicle resulted in the seizure of approximately 13.9 pounds of marijuana, plastic bags containing methamphetamine residue, scales containing methamphetamine residue, drug paraphernalia, a vacuum sealer, keys to a safe, AR-15 magazines, and boxes of .223 Remington ammunition. The marijuana seized was found in the trunk of the vehicle in the same box agents observed CAMACHO-GARCIA carrying out the rear entrance of 612 East 2nd Avenue, Columbus, Ohio, prior to the traffic stop.

8. As a result of the traffic stop, agents were granted authorization to execute a federal search warrant at 612 East 2nd Avenue. On November 23, 2020, members of the CDO executed this search warrant and seized approximately 80-kilogram wrappers containing cocaine residue and a hydraulic press covered in cocaine residue located in the basement of the residence, among other items. One of these items seized was approximately one ounce of fentanyl located in a safe in the living room area of the residence. After the search of the residence was complete, GARCIA and CAMACHO-GARCIA were released.

9. Based upon my training and experience and the training and experience of other law enforcement officers involved in this investigation, as well as my knowledge of this

3

investigation, it is law enforcement belief that members of this MLO were using 612 East 2nd Avenue for the purpose of distributing large amounts illegal narcotics.

10. January 06, 2021, members of the CDO contacted the owner of 612 East 2nd Avenue and was informed by the owner that Edith HERRERA rented the residence from October 23, 2020, to November 23, 2020. Edith HERRERA is known to law enforcement as Edith Joanna HERRERA-GARCIA and is known as GARCIA's daughter. Based on my training and experience and the training and experience from other law enforcement officers, I know that narcotics traffickers often utilized residences for short periods of time for the purpose of distributing illegal narcotics and place these residences in names other than their own to avoid detection by law enforcement.

11. In addition, HERRERA-GARCIA has been known to be associated with the distribution of illegal narcotics. In June, 2020, Ohio HIDTA Interdiction seized a UPS package containing 2,600 Oxycodone, 30 milligram pills of suspected fentanyl, destined to 491 Candlestick Court, Apartment A, Galloway, Ohio. At the time the package was seized, HERRERA-GARCIA was the listed owner of the residence. HERRERA-GARCIA was observed by law enforcement entering and exiting the residence of 491 Candlestick around the time the package was seized by HIDTA.

12. On February 09, 2021, at approximately 4:15 p.m., agents observed GARCIA's vehicle and a White Chevrolet Traverse, Ohio registration JEH1591 park at the rear of 949 East Long Street, Columbus, Ohio. Through investigative efforts and knowledge from other law enforcement officials involved in this investigation, it is agent's belief that 949 East Long Street is a location used by GARCIA for the distribution of illegal narcotics. At approximately 5:00 p.m., agents observed GARICA's vehicle and the Chevrolet Traverse depart 949 East Long

4

Street in tandem. At this time, agents observed a Hispanic female in the driver seat of the Chevrolet Traverse, who agent's believed to be HERRERA-GARCIA.

13. Specifically, on February 09, 2021, members of the High Intensity Drug Trafficking Arears (HIDTA Interdiction) indicted an individual who resided at 949 East Long Street on charges of Conspiracy to Distribute a Controlled Substance. This bolsters the information thereof that 949 East Long Street is a location used for facilitating, distributing and/or storing illegal narcotics.

14. On February 23, 2021, agents also observed HERRERA-GARCIA driving the Chevrolet Traverse. During this time, GARCIA and an unknown Hispanic male were also observed as the passenger inside the vehicle. At approximately 3:15 p.m., agents observed HERRERA-GARCIA arrive in the Chevrolet Traverse at GARCIA's residence of 73 North Harris Avenue, Columbus, Ohio. At this time, agents observed GARCIA and the unknown Hispanic male exit the vehicle and enter into the rear entrance of GARCIA's residence.

15. On February 23, 2021, at approximately 3:55 p.m., agents observed HERRERA-GARCIA arrive at her residence of 2886 Abbots Cove Boulevard, Columbus, Ohio in the Chevrolet Traverse. HERRERA-GARCIA was the only occupant inside the vehicle. At this time, agents observed HERRERA-GARCIA exit the driver seat of the Chevrolet Traverse and key her way into the front entrance of 2886 Abbots Cove Boulevard.

16. According to a law enforcement database, neither GARCIA nor HERRERA-GARCIA is the registered owner of the Chevrolet Traverse. The registered owner of the Chevrolet Traverse is listed as a Hispanic female. Based upon my training and experience and the training experience of other law enforcement officials involved in this investigation, I know

that narcotics traffickers commonly drive vehicles not registered in their own name to conceal their identity from law enforcement.

17. In addition, it is agent's belief that HERRERA-GARCIA discarded the Honda she previously drove, due to agents being unable to locate the vehicle. Based upon my training and experience and the training experience of other law enforcement officials involved in this investigation, I know that drug traffickers commonly switch their vehicles to keep from being detected by law enforcement.

18. On February 25, 2021, agents observed HERRERA-GARCIA and Isaac NERI-GARCIA walk out of 2373 Sunladen Drive, Columbus, Ohio, each carrying a brownish colored backpack. It was observed that HERRERA-GARCIA and NERI-GARCIA did attempt to conceal the backpack. At this time, HERRERA-GARCIA and NERI-GARCIA placed both backpacks in a black BMW. At this time, NERI-GARCIA entered into the driver seat of the BMW and HERRERA-GARCIA entered into the driver seat of the White Chevrolet Traverse. During this time, the BMW and the Traverse departed the residence in tandem. NERI-GARICA has been identified as a money courier for this MLO.

19. At approximately 10:45 a.m., OSHP attempted to conduct a traffic stop on the BMW due to speeding violation. At this time, the BMW fled the scene and would not stop for OSHP.

20. Surveillance was maintained on the White Chevrolet Traverse and at approximately 11:10 a.m., and agents observed the Traverse arrive at a Hyatt Place Hotel, located at 6161 Parkcenter Circle, Dublin, Ohio. At this time, agents observed HERRERA-GARICA walk into the front entrance of the Hotel. At approximately 11:30 a.m., agents

6

observed HERRERA-GARCIA exit the front entrance of the Hotel and enter into the driver seat of the Traverse. At this time the Traverse departed the Hotel.

21. Surveillance was maintain on the Traverse and agents observed the Traverse arrive at a Bob Evans restaurant in tandem with a gray Ford Expedition. The driver of the Ford Expedition was identified as NERI-GARCIA occupied by an unknown female (UF) passenger. During this time, agents observed HERRERA-GARCIA, NERI-GARCIA, and the UF enter into the Bob Evans restaurant. Moments later, agents observed HERRERA-GARCIA, NERI-GARICA, and the UF exit the Bob Evans and enter into their respected vehicles. At this time the Traverse, driven by HERRERA-GARICA and the Ford Expedition, driven by NERI-GARCIA depart the Bob Evans in tandem.

22. Based upon my training and experience and the training experience of other law enforcement officials involved in this investigation, it is agent's belief that the backpacks placed in the BMW earlier did contained illegal narcotics. Furthermore, the BMW fleeing further indicates that NERI-GARCIA was attempting to escape law enforcement. Based on my training and experience and the training experience of other law enforcement officials involved in this investigation, I know when narcotics traffickers attempt to flee from law enforcement during a traffic stop, they are attempting to conceal their identity and criminal activity.

23. Surveillance was maintained by agents on the Traverse and the Ford Expedition and agents observed both vehicles arriving at 1096 Sidney Street, Columbus, Ohio, in tandem. After arriving at 1096 Sidney Street, agents observed HERRERA-GARCIA enter into the front door carrying a bag. Moments later, agents observed HERRERA-GARCIA exit the front door, enter into the driver seat of the Traverse and depart the residence.

7

24. Agents maintained surveillance on the Ford Expedition and observed the vehicle park at the rear of 1096 Sidney Street. At this time, agents observed NERI-GARCIA and the UF exit the vehicle and walk into 1096 Sidney Street. Agents also observed NERI-GARCIA carrying the same brownish backpacks from early that was placed in the BMW inside the residence. Based upon my training an experience and the training experience of agents involved in this investigation, it is agent's belief that NERI-GARCIA did carry illegal narcotics inside the resident.

25. Based on the intelligence gathered on surveillance, agents and OSHP conducted traffic stops on individuals coming and going from 1096 Sidney Street. One of these traffic stops of a vehicle arriving and departing from the residence resulted in the seizure of approximately one gram of suspected methamphetamine. The individual stopped was identified as Tabitha LOIS-ALFUKAHA. LOIS-ALFUKAHA described the whereabouts to law enforcement of where she received the methamphetamine. Agents discovered this location was 1096 Sidney Road. LOIS-ALFUKAHA advised agents she observed firearms and large amounts of illegal narcotics inside the residence.

26. OSHP conducted another traffic stop from and individual arriving and departing from 1096 Sidney Road and seized a small amount of suspected fentanyl and marijuana. Based on my training and experience and the training experience of other law enforcement officials involved in this investigation, it is agents belief NERI-GARCIA and others, not yet identified, uses this location for the distribution of illegal narcotics.

8

27. Based on my training and experience and the training and experience of other law enforcement officers involved in this investigation, as well as my knowledge of this investigation, I know the following:

    (a) That narcotics traffickers very often place assets in names other than their own and/or use fictitious identification to avoid detection of these assets by government agencies or local law enforcement;

    (b) That even though these assets are in other persons' names the narcotics traffickers continues to exercise dominion and control;

    (c) That it is common for drug traffickers to maintain multiple premises from which their illegal business is conducted. Drug traffickers often store narcotics, narcotics proceeds and records related to the trafficking of narcotics at their residences and/or businesses and the residence and/or businesses of their relatives and co-conspirators;

    (d) That narcotics traffickers must maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing narcotics activities, as well as for paying bills, acquiring assets, and making other purchases;

    (e) That it is common for narcotics traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, bus tickets, rental car receipts, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, purchasing, processing, storage, sale and distribution of drugs, and the collection of its proceeds. That the aforementioned books, records, receipts, notes, ledgers, etc, are maintained where the narcotics traffickers have ready access to them;

    (f) That it is common for narcotics traffickers to secrete contraband, proceeds of drug sales, records of drug transactions, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value; and evidence of financial transactions relating to obtaining, transferring, secreting, and spending large sums of money made from engaging in narcotics trafficking activities in secure locations within their residences and/or other locations which they maintain dominion and control over in order that they have ready access to them;

9

(g) That it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment, and/or expenditure of narcotic proceeds, such as: currency, financial instruments, precious metals and gem stones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, loan records, money orders, bank drafts, cashier checks, bank checks, wire transfers, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences and/or other locations which they maintain dominion and control:

(h) That when drug traffickers amass a large amount of proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits;

(i) That to accomplish these goals, narcotics traffickers utilize, including, but not limited to, foreign and domestic banks and their attendant services, money transmitter agents, check cashing services, real estate agents, securities brokers, accountants, attorneys, business fronts, and otherwise legitimate businesses which generate large quantities of currency;

(j) That narcotics traffickers often utilize electronic equipment such as currency counting machines, telephone answering machines, telephone caller identification boxes, and pagers (digital display beepers) in their drug activities;

(k) That drug traffickers often take or cause to be taken photographs/video tapes of themselves, their associates, their property, and their products. These traffickers usually maintain these photographs/video tapes in their residences and/or other locations in which they maintain dominion or control;

(l) That the sale of narcotics generates large quantities of United States currency in small denominations (aka, street money);

(m) That it is common for drug dealers to separate their "street money" by denomination and put this currency in rubber banded stacks in varying $1,000 increments to facilitate quick counting;

(n) That narcotics traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses, and/or telephone numbers of their suppliers, customers,

and other associates involved in their narcotics trafficking organization;

(o) That drug traffickers commonly have in their possession that is on their person, at their residences and/or other locations which they maintain dominion and control, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to: narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. currency;

(p) That drug traffickers commonly use in the possession, dilution, or distribution of said narcotic drugs and non-narcotic controlled substances, including but not limited to adulterants, diluents, packaging, plastic bags, manila envelopes, strainers, measuring spoons, scales, grinders, weights, etc.;

(q) That the courts have recognized unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in narcotics.

## CONCLUSION

28. Based on the foregoing, I submit that there is probable cause to believe that the 1096 Sidney Street Residence, as further described in Attachment A, contains evidence, fruits, and instrumentalities, as further described in Attachment B, of violations of 21 U.S.C. § 841(a)(1) (distribution and possession with the intent to distribute controlled substance), and § 846 (conspiracy to distribute and to possess with intent to distribute controlled substances).

29. Consistent with General Order 18-01 of the Southern District of Ohio, I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until the search warrant returned is docketed. These documents discuss and ongoing investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because there premature disclosure may seriously jeopardized that investigation.

Respectfully submitted,

*antonio kelly*

Antonio T. Kelly
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on ___February 25, 2021___, 2021

Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

The property to be searched is located at 1096 Sidney Street, Columbus, Ohio 43201. The Residence is a single family residence.

## ATTACHMENT B

### Property to Be Seized

Agents are authorized to search the location further described in Attachment A and to seize any of the following items, regardless of the format in which they are or may be stored, as may constitute fruits, evidence, and/or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, for the period of April 2020 to the present:

1. Controlled substances, including but not limited to, suspected methamphetamine, heroin, cocaine, cocaine base, and Percocet pills;

2. Scales, containers, mixers, cutting tools, packaging materials, beaters, burners, and any other drug paraphernalia used in manufacturing, diluting, packaging, and distributing controlled substances;

3. All firearms and ammunition;

4. Books, records, notes, ledgers, and other papers relating to the manufacture, transportation, purchase, distribution, packaging, and sale of controlled substances, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment;

5. Books, papers, and documents and information contained within computers, cellular phones, and electronic organizers reflecting names, addresses, telephone numbers, and other contact or identification information of participants in drug trafficking activities;

6. Cash, currency, currency counters, precious metals, jewelry, financial instruments, and records relating to controlled substances income and expenditure of proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

7. Pagers, cellular phones, electronic organizers, caller identification services, answering machine devices, and other communication devices inside the residence and to search the contents of the listed devices at a later time, as outlined in the Affidavit in Support of this Search Warrant Application;

8. Photographs and videotape of participants in drug trafficking activities, and of property acquired from the sale of controlled substances;

9. Bank and other financial institution records consisting of savings, loans, records of deposits, statements, letters of credit, money orders, cashier checks, passbooks, cancelled check, certificates of deposit, lease agreements, customer account information, income and expense summaries, cash disbursement journals, financial statements, state and federal income tax returns, information related to the receipt and other disposition of income, and related financial information pertaining to the purchase, lease, or other disposition of real or personal property, including real estate, automobiles, jewelry, and furniture;

10. Safe deposit box lease agreements and safe deposit keys;

11. Proof of residence, including but not limited to cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, telephone and utility bills, statements, identification documents, and keys; and

12. Any safes, vaults, or secured storage equipment in that could secret any of the above-listed items, and the contents therein. Any secured storage units off the premises that is listed and attached to the residential owner of **1096 Sidney Street, Columbus.**

13. Vehicles located on the property of the residence and/or vehicles registered to the owner of the residence and/or person and/or persons detained inside the residence during the time of the execution of a search warrant.

3